UNITED STATES of America Plaintiff

v.

**ST. JOSEPH'S REGIONAL HEALTH CENTER Defendant**

No. 01–CV–6145.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

July 29, 2002.

Order on Motion for Reconsideration
Oct. 28, 2002.

Deborah Fennell Groom, U.S. Attorney's Office, Fort Smith, AR, Leslie Gillian Bohner, Drinker Biddle & Reath, Michael J. Holston, Drinker Biddle & Reath, LLP, Philadelphia, PA, for Plaintiff.

Diane S. Mackey, Friday, Eldredge & Clark, Little Rock, AR, Stephen J. O'Brien, Shannon M. Blankinship, Kirill Y. Abramov, Sonnenschein Nath & Rosenthal, St. Louis, MO, for Defendants.

H. William Allen, Jeffrey–Ellis, Allen Law Firm, Little Rock, AR, Michael J. Holton, Drinker Biddle & Reath LLP, Philadelphia, PA, for Movant.

## *ORDER*

HENDREN, District Judge.

On the 19th day of July, 2002, came on for hearing **Defendant's Motion To Unseal File** (document # 12) and **Defendant St. Joseph's Regional Health Center's Motion To Dismiss** (document # 14), and from said motions, the supporting documentation, the response thereto, and the arguments of counsel, the Court finds and orders as follows:

1. This action was commenced on February 27, 1996, in the United States District Court for the Eastern District of Pennsylvania, when Health Outcomes Technologies ("the Relator") filed a Complaint against St. Joseph's Regional Health Center ("St.Joseph's) and ninety-nine other defendants pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq. The gravamen of the Complaint was that the defendants "knowingly and willfully utilized inaccurate and improper ICD–9 codes and DRGs in order to receive higher

reimbursement under the Medicare Program than that to which they were otherwise entitled," a practice referred to as "upcoding." The Complaint recited, for each defendant, the number and percentage of such cases, and contrasted those statistics to national averages.

The case number assigned to the Complaint was 96–1552. Pursuant to the False Claims Act, the Complaint in case number 96–1552 was sealed and was not served upon the defendants until the government had an opportunity to determine whether it wanted to intervene. Under the Act, the government initially has sixty days in which to determine whether to intervene, but may obtain an extension of that period for good cause. Over the next five years, the government at various times intervened in the action as against one or more, but fewer than all, of the defendants. The files as against the remaining defendants remained sealed.

On April 30, 2001, the Pennsylvania court severed the Relator's claims in case number 96–1552 as against twenty-four defendants, created a new case as to each of those defendants, and then transferred the new cases (still under seal) to other districts. The Complaint in each of the severed cases was redacted so as to remove any reference to the other defendants.

The instant case was one such severed case. In the Eastern District of Pennsylvania it was assigned case number 01–2241. Case number 01–2241 was then transferred to the Western District of Arkansas, where St. Joseph's is located, and became the instant case. This Court denied further extensions of the seal period, and unsealed the file as transferred to it, with the exception of one document which identified other transferred cases by the names of the defendants therein.

The government elected to intervene in the instant case, and on December 27, 2001, filed a document entitled The United States' Complaint. The United States' Complaint states not one, but three, separate counts against St. Joseph's: Count I alleges violations of the False Claims Act by the making of false claims between October 1, 1992, and September 30, 1997; Count II alleges common law fraud for the same acts during the same period of time; and Count III alleges that St. Joseph's has been unjustly enriched by the acts upon which Counts I and II are based.

St. Joseph's now moves for full or partial dismissal of The United States' Complaint, and for the unsealing of those portions of the file which remain sealed.

2. St. Joseph's request that the file be unsealed is easily resolved. The file in the instant case has been unsealed, with the exception of the single document mentioned in ¶ 1. The file to which defendant seeks access is the file in case number 96–1552, the original multi-defendant Eastern District of Pennsylvania case, over which this Court has no jurisdiction. Accordingly, St. Joseph's arguments for lifting the seal should be addressed to the court with jurisdiction over the case and the motion to unseal must be denied.

3. In support of its motion for dismissal, St. Joseph's argues (a) that the Court lacks subject matter jurisdiction; (b) that the statute of limitations expired before The United States' Complaint was filed; and (c) that Count III of The United States' Complaint fails to state a claim.

4. *The Issue of Subject Matter Jurisdiction:*

The False Claims Act provides, in relevant part, as follows:

(A) No court shall have jurisdiction over an action under this section based upon public disclosure of allegations .... from the news media, unless ... the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4).

■ St. Joseph's initially contended that Count I of The United States' Complaint should be dismissed because it is based on publicly-disclosed information and government-issued administrative reports, and the relator is not an original source as defined in § 3730(e)(4)(B). This argument is without merit as to the claims of the government, inasmuch as the United States "may properly intervene in a suit by a putative source regardless of jurisdictional failures in the underlying suit." *Federal Recovery Services, Inc. v. U.S.*, 72 F.3d 447 (5th Cir.1995). St. Joseph's conceded this argument at the hearing, inasmuch as the relator has been dismissed from the case and the action is being conducted entirely by the government. The Court need not, therefore, further address this argument.

5. *The Statute of Limitations Argument:*

The False Claims Act provides that a civil action thereunder may not be brought more than six years after the date of the violation or more than three years after the date when material facts were or reasonably should have been known—but in any event must be brought within ten years. 31 U.S.C. § 3731.

With regard to the common law claims asserted in Count II (fraud) and Count III (unjust enrichment), the statute of limitations is established by 28 U.S.C. § 2415. Actions for money damages sounding in tort are governed by a three-year statute of limitations and those sounding in contract by a six-year statute of limitations. For purposes of computing these limitations periods, time during which the government did not know and could not reasonably have known of material facts is excluded. 28 U.S.C. § 2416.

The United States' Complaint deals with conduct alleged to have occurred between October 1, 1992, and September 30, 1997. The government claims it did not know of the alleged conduct before February 27, 1996—the filing date of the Complaint in case number 96–1552—but concedes that it was on notice thereafter. If the government's claims relate back to the filing date of the Complaint in 96–1552, St. Joseph's statute of limitations argument obviously lacks merit. If, however, the relevant filing date is that of the receipt of the file in case number 01–2241 when it was transferred to Arkansas from Pennsylvania—May 11, 2001—the claims with regard to some of the transactions will be barred.

While acknowledging that claims presented in a transferred action typically relate back to the date of filing of the original action, St. Joseph's argues that such treatment is not warranted here because of the "procedural oddities" of this case. St. Joseph's has reference to (a) an alleged lack of personal jurisdiction over it in the Pennsylvania action; (b) its position that the relator failed to make specific allegations against St. Joseph's and failed to allege intent to defraud; and (c) the fact that the government made multiple interventions into the original lawsuit.

Defendant relies on the case of *Biby v. Kansas City Life Insurance Co.*, 629 F.2d 1289 (8th Cir.1980), where the filing of a complaint was held not to toll the statute of limitations because it was not made in good faith. In *Biby*, the plaintiffs knew there was serious doubt that personal jurisdiction over defendants could be obtained in California, yet they filed suit in Califor-

nia immediately before the statute of limitations expired. They failed to make any effort to serve defendants in the California suit, however, and ten days after filing they obtained an *ex parte* order transferring the case to Arkansas. The Eighth Circuit held that "[s]ome measure of good faith expectation of proceeding in the court in which the complaint is filed is essential to tolling the statutes of limitations. A filing of a complaint which is merely a procedural ploy will not suffice." *Id.*, internal citation omitted.

While acknowledging that the holding in *Biby* is relatively limited, St. Joseph's urges that the circumstances in this case are strikingly similar to, and even more egregious than, those in *Biby*. The Court therefore turns to an examination of the known facts, keeping in mind that because the original Pennsylvania file in case number 96–1552 remains under seal, there is perforce much that is not known.

(a) The Complaint in case number 96–1552 named one hundred defendants. Only two of those defendants, Easton Hospital and Springfield Hospital, were alleged to "reside and transact business in the Eastern District of Pennsylvania." The government claims that their presence in the suit enabled venue to be laid in the Eastern District of Pennsylvania. The government concedes that St. Joseph's did not have any contacts with the State of Pennsylvania, and that if the action had been brought only against St. Joseph's, venue could not have been laid in Pennsylvania pursuant to 31 U.S.C. § 3732(a), which provides that "[a]ny action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one

defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." [1]

The Court does not find that the presence of the two Pennsylvania hospitals is sufficient to establish venue pursuant to 31 U.S.C. § 3732(a). As St. Joseph's points out, the Complaint in case number 96–1552 alleges no conspiracy or concert of action or joint and several liability between the defendants. Thus, there is no claim that would justify joinder of the relator's claims against St. Joseph's with its claims against the two Pennsylvania hospitals, pursuant to the provision of F.R.C.P. 20(a) ("All persons … may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action"). Venue against St. Joseph's in case number 96–1552 was predicated on a misjoinder of parties.

(b) The Complaint in case number 96–1552 asserted that 15,000 false claims had been made by one hundred defendants, yet it contained but a single count. F.R.C.P. 10(b) provides that " [e]ach claim founded upon a separate transaction or occurrence … shall be stated in a separate count … whenever a separation facilitates the clear presentation of the matters set forth." The Court finds that had the separate transactions been set forth in separate counts as contemplated by F.R.C.P. 10(b), it would have facilitated a clear realization that the Complaint in fact comprised one hundred different complaints—each of

---

1. While St. Joseph's characterizes this as a defect in personal jurisdiction, the Court notes that the existence of a provision for nationwide service of process in 31 U.S.C. § 3732(a) confers nationwide personal juris- diction over False Claims Act defendants. *In re Federal Fountain, Inc.*, 165 F.3d 600 (8th Cir.1999) (dealing with Fed.R.Bankr.P. 7004(d)). The issue is one of venue.

which would have required its own basis for venue. The government essentially acknowledged, by its conduct in moving to sever and transfer this case when it got around to dealing with the claims against St. Joseph's, that proper venue for those claims lay in the Western District of Arkansas. At the time of the severance, the two Pennsylvania hospitals upon which venue was predicated had been dismissed for over two years.

(c) Upon severance of the claim against St. Joseph's from case number 96–1552, a new case was created, again in the Eastern District of Pennsylvania—case number 01–2241. The government concedes that at the time, St. Joseph's did not reside in Pennsylvania, could not be found there, did not transact business there, and did not carry out any act proscribed by 31 U.S.C. § 3729 there. Case number 01–2241 would have been subject to a motion to dismiss for lack of venue, had one been made. However, St. Joseph's was not served with the Complaint in case number 01–2241, so it had no opportunity to make such a motion. The Court finds that case number 01–2241 was created merely as a vehicle to allow the claims against St. Joseph's to be moved to the Western District of Arkansas.

(d) Neither the Complaint in case number 96–1552 nor the Complaint in case number 01–2241 was served on St. Joseph's, nor is there any indication that the relator or the government intended to serve St. Joseph's within the context of either of those two actions. Such as is known about the procedural history of this matter suggests just the opposite. According to the Online Docket Sheet for the original case, there was no activity involving St. Joseph's between the filing of the Complaint in case number 96–1552 on February 27, 1996, and the Order to sever the cases of twenty-four separate defendants into separate cases and transfer those cases to other districts on April 30, 2001. At the hearing on this matter, the government offered no explanation for the severance and transfer except that when it looked like the case was "going to be a case, we needed to bring it to Arkansas."

(e) The severance and transfer Order appears to have resulted from an *ex parte* motion filed by the government, even though it had not intervened in case number 96–1552 as against St. Joseph's. The False Claims Act provides that an action thereunder "shall be conducted by the Government" *if* the government elects to intervene, and that it will be conducted by the relator if the government declines to intervene. 31 U.S.C. § 3730(b)(4). As the Fifth Circuit has said, "[t]he Act forces the government to decide at the outset whether it wants to become an active litigant or to let the relator represent its interests." *Searcy v. Philips Electronics North America Corp.*, 117 F.3d 154 (5th Cir.1997). While the government is the real party in interest in a *qui tam* action, the Court has been cited to no authority for the proposition that without exercising its right to intervene it can move the court handling the case to act on its behalf, so as to get the case into a more desirable—or correct—procedural posture before intervention.

(f) The Court also notes that in a False Claims Act case the file is not unsealed until the government makes its intervention decision. If the government had intervened in case number 96–1552 as to the claims against St. Joseph's, the file would have been unsealed and St. Joseph's would have had access to the material it now seeks but cannot obtain from this Court. As a result of the procedural mechanisms discussed herein, the case against St. Joseph's was severed and transferred to Arkansas before the government intervened, and the evidentiary materials which were

submitted by the relator in the original case were not transferred. Thus, when the file was unsealed in Arkansas, those materials did not become available to St. Joseph's, as they would if the case had been originally filed in Arkansas.

(g) Another procedural irregularity in this case involves the multiple interventions. The False Claims Act provides that before the expiration of the period of time during which the government may investigate the case,

the Government shall—

(A) proceed with the action, in which case the action shall be conducted by the Government; or

(B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

31 U.S.C. § 3730(b)(4).

While the Court has no history of events occurring in case number 96–1552 before November 9, 1998, the Online Docket Sheet reflects that from that date until September 7, 2001, the government intervened at least twenty times, each time intervening as to one or more—but fewer than all—defendants and then dismissing the claims against the selected defendant(s), presumably as a result of a settlement.

St. Joseph's acknowledges that the issue is one of first impression, but contends that such multiple interventions violate the spirit and the letter of the Act. The Court agrees. Partial interventions are allowed, *United States ex rel. O'Keefe v. McDonnell Douglas Corporation*, 918 F.Supp. 1338 (E.D.Mo.1996), and the government may change its mind and seek to intervene following a decision not to intervene, upon a showing of good cause, 31 U.S.C. § 3130(c)(3). Neither of these expedients, however, abuses the essential nature of the False Claims Act, which is to allow a private plaintiff to assert on behalf of the government fraud claims about which the government is uninformed; to allow a reasonable time for the government to investigate; and then to give the government its choice to carry on with the case or leave it to the relator. Contrary to that plan, the multiple interventions in this case appear to the Court to have no other justification than to allow the government to investigate and settle the multiple claims at its own pace, selectively carving out those claims that were easiest to settle while keeping the remaining defendants in limbo until it chose to act against them.

■ (h) When the many procedural irregularities that have attended this case are viewed collectively, the Court is constrained to conclude, as urged by St. Joseph's, that this case comes within the rule announced in *Biby*—that some good faith expectation of proceeding in the court in which the complaint is filed is essential to tolling statutes of limitations. The Court finds that the filing of case number 96–1552 amounted to nothing more than a procedural ploy—at least insofar as it pertains to St. Joseph's—and that it does not meet the good faith requirement. Such an abuse of the False Claims Act procedure cannot justify the tolling of the statutes of limitations.

(i) Given the foregoing analysis, the Court concludes that the government's claims do not relate back to the date of the filing of the Complaint in case number 96–1552, but only back to the date when case number 01–2241 was transferred to Arkansas. Because the False Claims Act bars claims older than six years, those claims in Count I of The United States Complaint that occurred before May 11, 1995, are barred by that statute of limitations. 31 U.S.C. § 3731.

The fraud claims asserted in Count II, sounding in tort, are barred entirely by

the three-year statute of limitations. 28 U.S.C. § 2415(b).

The claims asserted in Count III, grounded on the doctrine of unjust enrichment, sound in quasi-contract. *Sparks Regional Medical Center v. Blatt,* 55 Ark. App. 311, 935 S.W.2d 304 (1996). Those claims are subject to a six-year statute of limitations. Therefore the Court finds that claims in Count III that occurred before May 11, 1995, are barred. 28 U.S.C. § 2415(a).

█ 6. St. Joseph's argues that The United States' Complaint should be dismissed in its entirety for failure to plead fraud with particularity as required by F.R.C.P. 9(b). St. Joseph's contends that the government's statistical analysis is insufficient to state a claim for fraud and that specific transactions must be pled. The Court does not agree.

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899 (5th Cir.1997), relied upon by St. Joseph's in this respect, found claims based on statistics insufficient because there was no indication that the studies directly implicated the defendants. In the case at bar, the United States' Complaint sets forth the relevant national statistics as well as the statistics allegedly indicated by studies of St. Joseph's billing practices. The wide discrepancy between the two implicates St. Joseph's sufficiently for purposes of F.R.C.P. 9(b).

The United States' Complaint sets forth in precise detail the means by which it believes that St. Joseph's manipulated the Medicare billing system so as to improperly increase the payments it received for certain diagnoses. The Court believes these averments adequately place St. Joseph's on notice of what it is being accused of doing and what will be necessary for it to prepare an effective defense. The motion to dismiss for failure to plead fraud with particularity will therefore be denied.

7. Finally, St. Joseph's contends that Count III, seeking to recover for unjust enrichment, must be dismissed because unjust enrichment is a remedy rather than a cause of action. This argument is refuted in *United States v. Applied Pharmacy Consultants, Inc.,* 182 F.3d 603 (8th Cir. 1999), and the motion to dismiss on this grounds will be denied.

**IT IS THEREFORE ORDERED** that **Defendant's Motion To Unseal File is denied.**

**IT IS FURTHER ORDERED** that **Defendant St. Joseph's Regional Health Center's Motion To Dismiss is granted in part and denied in part.**

The motion is **granted insofar as it seeks dismissal of plaintiff's claims under the False Claims Act and common law fraud for transactions occurring before May 11, 1995.**

The motion is **denied in all other respects.**

### *ORDER ON MOTION FOR RECONSIDERATION*

Now on this 28 day of October, 2002, comes on for consideration **United States' Motion For Reconsideration** (document # 41), and from that motion, and the response thereto, the Court finds and orders as follows:

1. On July 29, 2002, following a hearing at which both parties were represented by counsel, the Court entered an Order resolving **Defendant St. Joseph's Regional Health Center's Motion To Dismiss** (document # 14). Based on the facts before it, the Court found that this case falls within the rule announced in *Biby v. Kansas City Life Insurance Co.,* 629 F.2d 1289 (8th Cir.1980) ("Some measure of good faith expectation of proceeding in the court in which the complaint is filed is essential to tolling the statutes of limitations"). The

effect of the July 29 Order was to eliminate plaintiff's False Claims Act claims and quasi-contract claims which arose before May 11, 1995, and to completely eliminate plaintiff's fraud claims.

2. Plaintiff now asks the Court to reconsider its ruling, arguing that it understood the hearing to relate only to whether defendant had sufficient minimum contacts with Pennsylvania to support personal jurisdiction there. The Court finds this to be a good and sufficient reason to grant reconsideration, and has now fully reconsidered the matter in light of the briefing supplied by plaintiff, and the defendant's response thereto.

3. Plaintiff contends that the Court's July 29, 2002, ruling was in error for the following reasons:

(a) The transfer of a case from one district to another does not place the parties in any different position with regard to the applicable statutes of limitation than existed at the time of initial filing.

(b) Both relator and plaintiff, acting in good faith, evidenced an intent to proceed with this action in the United States District Court for the Eastern District of Pennsylvania, and therefore *Biby* is not applicable.

(c) The Pennsylvania court approved each procedural step taken while the case was pending in that jurisdiction, and this Court should not call those steps into question.

(d) Plaintiff will be severely prejudiced by the Court's ruling, whereas defendant will suffer no prejudice from a contrary ruling.

The Court will examine each of these propositions in turn.

4. Plaintiff first contends that the transfer of a case from one district to another does not place the parties in any different position with regard to the applicable statutes of limitation than existed at the time of initial filing, arguing that the federal transfer statute, 28 U.S.C. § 1406(a), was specifically designed to avoid dismissals that would result in a plaintiff losing a significant part of its cause of action. This proposition is a correct statement of the law, given ordinary circumstances, but it ignores the holding in *Biby.* Furthermore, the Court does not believe that *Biby* contradicts or undermines the holding in *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), upon which plaintiff relies.

In *Goldlawr,* the Supreme Court found that the court in which an action was filed could transfer that case to a court in a proper venue, regardless of whether the first court had proper venue or even personal jurisdiction over the defendant. The Court noted therein the underlying basis for 28 U.S.C. § 1406, to-wit:

> The problem which gave rise to the enactment of the section was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn. Indeed, this case is itself a typical example of the problem sought to be avoided, for dismissal here would have resulted in plaintiff's losing a substantial part of its cause of action under the statute of limitations merely because it made a mistake in thinking that the respondent corporations could be 'found' or that they 'transact * * * business' in the Eastern District of Pennsylvania.

Fleshing out this statement, the opinion went on to stress that § 1406 was "in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expedi-

tious and orderly adjudication of cases and controversies on their merits," and that a transfer would be appropriate "in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities'." In the case at bar, however, if plaintiff were allowed the benefit of § 1406, the ironic result would be just the opposite. The expeditious adjudication of plaintiff's claims would have been impeded and delayed by time-consuming and—if justice delayed is indeed justice denied— justice-defeating technicalities. The plaintiff thus relies on *Goldlawr* to achieve that which *Goldlawr* sought to avoid.

Cases decided in this Circuit subsequent to *Goldlawr* reinforce the Court's conclusion that it was not the intent of *Goldlawr* to toll the statute of limitations by a mere filing after which the claim was allowed to lie fallow indefinitely. In *Moore Company of Sikeston, Mo. v. Sid Richardson Carbon & Gasoline Company,* 347 F.2d 921 (8th Cir.1965), the Eighth Circuit took up the issue of whether the mere filing of a complaint in a federal question case would suffice to toll the statute of limitations, or whether reasonable diligence in obtaining service was also required. The Court there held that mere filing would suffice, but the case turned on the fact that under the then-current version of F.R.C.P. 4(a), the clerk of court would issue summons and deliver it to the federal marshal for service—reducing the chances of a lack of reasonable diligence in obtaining service and proceeding with the action—and on the availability of F.R.C.P. 41(b) to a defendant as to whom diligent prosecution did not occur. Under the current version of F.R.C.P. 4, the plaintiff is responsible

for service of process, and a party not served—such as defendant in the case at bar—would not be in a position to utilize F.R.C.P. 41(b) to advance the case and reach resolution of the claims against it.

In *Biby,* the Eighth Circuit held that "[s]ome measure of good faith expectation of proceeding in the court in which the complaint is filed is essential to tolling the statutes of limitations." It found a lack of good faith where the plaintiff knew there was doubt that jurisdiction could be obtained over the defendants in the California court; made no effort to serve the defendants in California; and obtained an *ex parte* order to transfer the case to Arkansas. *Biby* is still good law in this Circuit, and the Court recently clarified that it is the lack of intent of the plaintiff to proceed in the initial forum that triggers *Biby.* In *Chandler v. Roy,* 272 F.3d 1057 (8th Cir.2001), an erroneous choice of forum did not trigger *Biby* because the plaintiff wanted her case heard in the initial forum; served the defendants there; never requested a change of venue; and opposed a motion to dismiss for lack of jurisdiction.

 When the Court considers *Goldlawr, Moore, Biby,* and *Chandler,* it concludes that an error in selecting the forum, where the defendant can obtain corrective action within a reasonable period of time, does not affect the statute of limitations, even if the selection of the forum was unreasonable. However, where a plaintiff deliberately selects an improper forum; makes no effort to serve the defendant in that forum[1] so that the defendant cannot seek to correct the error; makes the transfer request itself—ex *parte*—for its

---

1. Plaintiff's statement that "the existence of the seal *prohibited* both the United States and the relator from serving St. Joseph's with the complaint until the district court lifted the seal for the purpose" ignores the fact that, but for the repeated requests of the government to continue the seal, it would have been lifted after only sixty (60) days. 31 U.S.C. § 3730(b).

own purposes; and never had any intention of prosecuting the claim in the forum of filing,[2] there is no analytical basis for the filing to toll the statute of limitations.

5. Plaintiff contends that both it and the relator acted in good faith and evidenced a genuine intent to proceed with this action in Pennsylvania, making *Biby* inapplicable. For example, it contends that Pennsylvania was a proper venue under the False Claims Act because such an action may be brought where any one of multiple defendants resides. This argument was resolved against plaintiff in the Court's earlier ruling: there is no allegation of a conspiracy or connection between the defendants in this case and therefore no basis for application of the multiple-defendant venue provision. The argument brought forth now, that "there is no reason to think that at the time the complaint was filed that such a connection might not have existed," does not alter the Court's conclusion on this issue. Such an argument is mere speculation.[3]

Plaintiff also contends that its conduct during the pendency of the Pennsylvania case evinced an intention to proceed with the action against defendant there. It states that "during the time that the complaint was pending in [Pennsylvania], the United States dutifully investigated the claims against each of the defendants in the action, and periodically updated the Pennsylvania court on the status of its investigations."[4] Since the Pennsylvania case is under seal, this statement amounts to nothing more than an assertion of counsel, and the evidence that is available to this Court contradicts it. It appears the government has yet to determine whether defendant acted alone or in concert with other hospitals within its own corporate chain. In addition, the parties have asked this Court not to set this matter down for trial until at least September 1, 2003—over two years after it was transferred to Arkansas.

6. The plaintiff also argues that the Pennsylvania Court approved each procedural step taken while its claim against defendant lay in that jurisdiction and, therefore, this Court should not call those steps into question. *Biby* supplies the answer to this argument. Neither the validity of the transfer order nor the appropriateness of the multiple extensions granted by the Pennsylvania Court are under review here. This Court assumes that the Pennsylvania Court made correct decisions based on the information then before it. However, the limitations issue and the constraints of *Biby* raised here by defendant were not—and could not have been—raised in either of the Pennsylvania actions because defendant was never afforded an opportunity to participate in the *ex parte* proceedings there.

---

2. It is the lack of intent to proceed in the forum that is relevant—not the intent to evade the statute of limitations—therefore, plaintiff's attempt to distinguish *Biby* because the relator filed its claim two years before the statute would expire is unavailing.

3. This argument tends to support the Court's belief that the filing and continuation of the Pennsylvania action was a procedural ploy. Plaintiff contends that it reserves the right to allege that the conduct of defendant was a result of "system-wide practices" at the Sisters of Mercy chain of hospitals—until "after obtaining discovery in this case relating to St.

Joseph's conduct." If the government—armed with its investigative powers and the procedural tools of the FCA—was not able to resolve that question between February of 1996 and May of 2001, the Court doubts that a further reservation of rights to pursue the matter would be likely to see any success.

4. The government also makes the surprising assertion that it "proceeded with the case as it was filed by relator in an efficient and streamlined fashion." Such assertions of diligence on the part of the government lack support in the record reviewed by this Court.

7. Finally, plaintiff argues that it will be severely prejudiced by the Court's ruling, whereas defendant will suffer no prejudice from a contrary ruling. The Court does not agree. Statutes of limitation exist to protect defendants from stale claims, lost evidence, and disappearing witnesses. While it is true, as argued by plaintiff, that such statutes may be outweighed where the interests of justice require vindication of the plaintiff's rights, the justifications alluded to in the case cited by plaintiff involved situations in which (1) a defendant misled a plaintiff into believing he had more time to bring suit; (2) war prevented a plaintiff from bringing suit; and (3) where in past cases defendant had waived venue objections, leading plaintiff to believe they would be waived again, then raised such objections after the statute of limitations had expired so that the case could not be transferred. *Burnett v. New York Central Railroad Company,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Nothing similar obtains in the instant case. Instead, it appears this matter was completely within the control of plaintiff and relator—where and when to file the complaint, how long to investigate, when and whether to intervene, and when to request severance and transfer. Here, defendant was powerless to act until it was served.

Plaintiff also suggests that defendant knew in March, 1998, that it was being investigated for the violations alleged in this case and, therefore, the statute of limitations does not present a problem, citing 15 Wright, Miller & Cooper, *Federal Practice & Procedure 2d,* § 1501. That commentary suggests that no limitations problem should arise from the addition of a new plaintiff where "defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action." Plaintiff contends that the service of a subpoena for the medical records and claims at issue in this case meets this test. The Court does not agree. The mere requirement to produce records, without more, cannot be considered as notice of a claim arising from specific conduct and preparation to defend that claim. Plaintiff admits that defendant was not shown a copy of the Complaint until the summer of 2000.

Had this matter become a case involving defendant at an earlier time, defendant could have taken steps to avoid problems such as lost evidence and disappearing witnesses. Without being made a party, mere awareness of the investigation would not have enabled it to preserve the testimony of witnesses by depositions; to compel production of documents; or to seek to prevent destruction of documents in the hands of third parties over whom it had no control. Those are the types of actions that can only be taken within the context of litigation, and the inability to take them is, in the Court's opinion, prejudicial to defendant.

8. Having considered the arguments raised by plaintiff in its Motion For Reconsideration, the Court finds no reason to alter or amend the Order entered on July 29, 2002.

**IT IS THEREFORE ORDERED** that the **United States' Motion For Reconsideration is granted.**

**IT IS FURTHER ORDERED** that, upon reconsideration, the Court finds no reason to alter or amend the Order entered July 29, 2002, and the directives of that Order shall remain in full force and effect.

**IT IS SO ORDERED.**