**UNITED STATES of America ex rel. Health Outcomes Technologies, Plaintiff,**

**v.**

**HALLMARK HEALTH SYSTEM, INC., Lawrence Memorial Hospital, Malden Hospital and Whidden Memorial Hospital, Defendants.**

No. CIV.A.01–11375–NMG.

United States District Court, D. Massachusetts.

Jan. 6, 2006.

**44**

Sara M. Bloom, United States Attorney's Office, Boston, for United States of, Plaintiff.

Ryan M. DiSantis, Ropes & Gray LLP, Boston, for HallMark Health Corporation, Hallmark Health System, Inc., Lawrence Memorial Hospital of Medford, Malden Hospital, The, Whidden Memorial Hospital, Defendants.

Michael K. Fee, Ropes & Gray LLP, Boston, for HallMark Health Corporation, Hallmark Health System, Inc., Lawrence Memorial Hospital of Medford, Malden Hospital, The, Whidden Memorial Hospital, Defendants.

Dale C. Kerester, Lynch, Brewer, Hoffman & Fink LLP, Boston, for Health Outcomes Technologies, Plaintiff.

David J Leviss, U.S. Department of Justice, Civil Division, Commercial Litigation, Washington, DC, for United States of, Plaintiff.

Kirsten V. Mayer, Ropes & Gray, Boston, for HallMark Health Corporation, Hallmark Health System, Inc., Lawrence Memorial Hospital of Medford, Malden Hospital, The, Whidden Memorial Hospital, Defendants.

Kenneth I. Trujillo, Trujillo Rodriguez & Richards, LLC, Philadelphia, PA, for Health Outcomes Technologies, Plaintiff.

Richard P. Ward, Ropes & Gray LLP, Boston, for HallMark Health Corporation, Hallmark Health System, Inc., Lawrence Memorial Hospital of Medford, Malden Hospital, The, Whidden Memorial Hospital, Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In the instant *qui tam* action, the government alleges that the defendants committed fraud involving Medicare by "knowingly submitting to Medicare, between 1992 and 1997, false claims for the treatment of patients that did not have the primary diagnoses the hospitals claimed". Suit was originally brought by Health Outcomes Technologies ("Health Outcomes"), a Pennsylvania corporation with its principal place of business in Doylestown, Penn-

sylvania, and, after an extremely lengthy delay, the government chose to intervene. The defendants move to dismiss the case or, in the alternative, to stay the proceedings.

## I. *Background*

### A. Facts

The government alleges that during the early 1990s Whidden Memorial Hospital in Everett, Massachusetts ("Whidden"), Malden Hospital ("Malden") and Lawrence Memorial Hospital of Medford ("Lawrence") (collectively "the Hospital Defendants") each decided to increase its Medicare reimbursement by increasing its "case mix index" ("CMI").[1] The CMI is the hospital's average "weight" of codes assigned to its Medicare claims. The higher the CMI, the higher the reimbursement.

The government alleges that the Hospital Defendants accomplished the increases by mis-coding Medicare claims with respect to pneumonia. There are 24 different Medicare codes for pneumonia based upon the different potential causes and the codes generate reimbursements at different rates.

Specifically, if a physician diagnoses "bacterial pneumonia" but does not specify the organism that caused it, the proper code is allegedly 482.9, "bacterial pneumonia unspecified". In contrast, if the physician diagnoses "bacterial pneumonia" and also concludes that it arose from a *specific bacteria* of a kind that does not have a specific code associated with it, the proper code is 482.89, "pneumonia due to other specified bacteria". In the latter scenario, it is apparently necessary to specify the

kind of bacteria in the file. Code 489.89 is a higher paying code than 482.9. The government's allegation is simple: the Hospital Defendants repeatedly used 482.89 when they should have used 482.9 and thereby received a higher reimbursement than warranted.

### B. Procedural History

On February 27, 1996, Health Outcomes filed, against 100 hospitals, an action on behalf of the United States under seal in the Eastern District of Pennsylvania pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729–3733. The suit was based upon statistical evidence and alleged misconduct to defraud Medicare with respect to the use by the hospitals of certain diagnosis codes.[2] The complaint seeks treble damages and civil penalties under the False Claims Act. Several hospitals in Massachusetts, including the three Hospital Defendants in this action, were among the 100 original hospital-defendants.

More than five years later, in August, 2001, the United States District Court for the Eastern District of Pennsylvania severed claims against the Massachusetts hospitals and transferred them to this Court. The case was assigned to United States District Judge Tauro until July 13, 2004, when it was re-assigned to this session.

While the case was assigned to Judge Tauro, the government repeatedly sought and obtained extensions of the time to consider whether to intervene. The government finally filed a Notice of Intervention on December 31, 2003. Its complaint, entitled the "First Amended Complaint"

---

1. Hallmark Health System, Inc. is a defendant because it is the former owner of the Hospital Defendants. It appears that all of the hospitals have since been sold or ceased to operate.

2. The False Claims Act required the District Court to place the complaint and all subsequent filings under seal. *See* 31 U.S.C. §§ 3730(b)(2)-(3).

(replacing Health Outcomes's complaint), was filed on July 1, 2004. It alleged claims for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seg.,* unjust enrichment, "payment by mistake" and recoupment.

On January 13, 2005, the government filed a "Second Amended Complaint" which added additional factual allegations to the claims. The government did not seek leave of Court before filing the amendment, claiming it was unnecessary pursuant to Fed.R.Civ.P. 15 (which permits one amendment without leave before a responsive pleading is filed) because "no responsive pleading ha[d] been served" by the defendants.

The defendants deny all allegations of wrongdoing and allege that the coding practices they used were legitimate. Two motions to dismiss and a motion to strike had been filed at the time of the scheduling conference on March 30, 2005. At that conference, the Court, after hearing oral argument, 1) denied defendants' Motion to Strike the Second Amended Complaint, 2) denied defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) as moot, 3) denied defendants's Motion to Dismiss pursuant to Fed.R.Civ.P. 9(b) as moot and 4) gave defendants leave to re-file their motions to dismiss with respect to the second amended complaint. Since that conference, defendants have filed four motions: 1) Motion to Stay Pursuant to the Primary Jurisdiction Doctrine, 2) Motion to Dismiss the Second Amended Complaint for Failure to Comply with the Particularity Requirements of Fed.R.Civ.P. 9(b), 3) Motion to Dismiss the Second Amended Complaint Based on Statute of Limitations and 4) Motion to Dismiss the Entire Second Amended Complaint for Failure to State a Claim and, with Regard to the Common Law Claims Asserted Therein, for Lack of Jurisdiction. The government opposes all of those motions and the Court now resolves them as follows.

## II. *Legal Analysis*

### A. Standard of Review

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell,* 160 F.3d 67, 72 (1st Cir.1998)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet,* 83 F.Supp.2d at 208.

■ A district court's order of dismissal for failure to state a claim predicated on the statute of limitations is "entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 509 (1st Cir. 1998).

### B. Analysis

The Hospital Defendants have made three separate motions to dismiss the case, each predicated on different legal grounds.

Through this calculated, piecemeal strategy, the defendants were able to submit an astonishing 115 pages of legal memoranda (including replies) when they would have otherwise been limited to 20 had they prudently addressed those issues in a single memorandum.

Despite defendants' avoidance of Local Rule 7.1, this Court has reviewed all the memoranda submitted in support and opposition to defendants' motions to dismiss but concentrates, for reasons that will become clear, on the one based on the statute of limitations.

### 1. Statute of Limitations

The Hospital Defendants argue that it was clear on the face of Health Outcomes's original complaint that the Eastern District of Pennsylvania was not a proper venue in which to bring its claims against them. They also contend that it is clear from the conduct of the litigation since its inception that there was never any intent to proceed against them in that jurisdiction and that, under these circumstances, the claims in this case should have been filed initially in Massachusetts where venue is proper. Thus, the Hospital Defendants assert that any claims that were untimely as of the date this case was transferred to Massachusetts, specifically any claims for conduct prior to August 9, 1995, must be dismissed on statute of limitations grounds. This overarching statute of limitations argument asserted by the Hospital Defendants is an amalgam of several subsidiary arguments which this Court will address *seriatim.*

### a. Venue

### 1. Joinder of Hospital Defendants

█ In the original complaint filed in the Eastern District of Pennsylvania on February 27, 1996, the Relator, Health Outcomes, brought claims under the False Claims Act against 100 defendant hospitals from all over the United States. Only two of those defendants, Easton Hospital and Springfield Hospital, were alleged to "reside and transact business in the Eastern District of Pennsylvania." As to the remaining 98 defendants, Health Outcomes premised venue on 31 U.S.C. § 3732(a) which states that

> Any action under Section 3730 may be brought in any judicial district in which the Defendant or, in the case of multiple defendants, any one Defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred.

Section 3732(a) goes on to provide for nationwide service of process, thereby conferring nationwide personal jurisdiction over False Claims Act defendants.

Despite the strategy by Health Outcomes to base venue on § 3732(a), it nevertheless failed to allege a conspiracy, concert of action, communication, contract, joint or several liability between (or any kind of relationship among) the 100 hospital-defendants. Section 3732(a) does not operate independently of Fed.R.Civ.P. 20(a) which states:

> All persons...may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

A well-known treatise on *qui tam* actions strikes a similar note with respect to § 3732(a):

> [I]f venue is proper as to one defendant in a jurisdiction, it is proper for all other defendants in the same proceeding who are involved in the same false claims. This does not mean, however, that de-

fendants who are accused of similar, but unrelated, conduct may be sued in the same district.

John T. Boese, *Civil False Claims and Oui Tam Actions* (2d ed.) § 5.06[A][1]. *See also United States ex rel. Citizens to Reduce and Block Fed. Fraud, Inc. v. Metro. Med. Ctr., Inc.,* 1990 U.S. Dist. LEXIS 18339 at *1 (holding that plaintiffs in a False Claims Act suit against several doctors and medical centers associated with *the same* health maintenance organization would be required to present a different set of facts for each individual doctor and medical center because of the differences in their practices and the particular circumstances surrounding the allegations against each defendant).

The 1996 complaint did not attempt to allege any basis under Rule 20 to support invocation of § 3732(a). During the nine years that transpired between the filing of the original complaint by Health Outcomes in the Eastern District of Pennsylvania and the filing of the Second Amended Complaint in this Court, nothing has occurred that would provide that support.

Moreover, both Health Outcomes and the government have been afforded several opportunities by this Court to present a colorable reason for venue in the Eastern District of Pennsylvania in light of Rule 20 and they have failed to do so every time. For instance, when this Court pressed counsel for the government on the joinder issue when it heard oral argument on March 30, 2005, counsel made no mention of Fed.R.Civ.P. 20. Instead, he asserted that venue was proper for the 98 hospital-defendants not found in the Eastern District of Pennsylvania under the statutory language of § 3732(a), an argument that is incorrect unless one assumes the False Claims Act to have caused the Federal Rules of Civil Procedure to be suspended. Later, in its opposition to the Hospital

Defendants' Motion to Dismiss Based on the Statute of Limitations, the government addresses the joinder issue in a footnote. It makes no effort to deny defendants' assertion that the relator's complaint misjoined the parties but instead argues that misjoinder is not an automatic indication of bad faith on the part of the relator or the government, an argument addressed *infra.*

The government has not proffered a single legitimate argument to refute or negate defendants' claim of misjoinder in the original 1996 complaint. This Court concludes, therefore, that venue in the Eastern District of Pennsylvania with respect to the Hospital Defendants was predicated on a misjoinder of parties.

### 2. Transfer of Venue

In July, 2001, the District Court in the Eastern District of Pennsylvania transferred the case to this Court. In its transfer order, the Court did not indicate whether the case was transferred pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. Defendants assert that, at the behest of the government, § 1404(a) was utilized. A motion to transfer pursuant to § 1404(a) is allowed only when venue is proper in the original district in which the case is filed and all parties have notice of the proposed transfer. Defendants contends that venue was clearly improper in the original district due to misjoinder and, thus, transfer pursuant to § 1404(a) was no transfer at all.

The government counters that regardless of which statute was ostensibly relied upon to transfer the case, the Pennsylvania court had the authority, *sua sponte,* to transfer the action pursuant to § 1406. A motion to transfer pursuant to § 1406 is allowed where a mistake has been made with respect to venue in the original district but, in the interest of justice, transfer to another district or division is proper.

This Court is unaware of which statute the government relied upon in its *ex parte* motion to transfer because that motion remains under seal. On a motion to dismiss, it draws all reasonable inferences in the plaintiff's favor which means that here it infers that the Pennsylvania court transferred this case pursuant to § 1406.

The government asserts that this Court, upon finding that § 1406 was the statute upon which the Pennsylvania court premised its transfer of venue, must give deference to that decision as "law of the case" and cannot directly review another court's order of transfer.[3] That assertion is without merit because it misses defendants' principal point that the filing of the original 1996 complaint in the Eastern District of Pennsylvania did not commence the action against the defendants for purposes of tolling the statute of limitations.

### b. Good Faith

Section 1406(a) of Title 28 of the United States Code states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

In *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), the Supreme Court stated, with respect to § 1406(a):

> The problem which gave rise to the enactment of the section was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind

upon which venue provisions often turn.... [The statute is] in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits.

*Id.* at 466–67, 82 S.Ct. 913.

In *Biby v. Kansas City Life Insurance Co.,* 629 F.2d 1289 (8th Cir.1980), the Eighth Circuit Court of Appeals held that, with respect to tolling the statute of limitations, "[s]ome measure of good faith expectation of proceeding in the court in which the complaint is filed is essential". *Id.* at 1294. The *Biby* Court went on to conclude that *Goldlawr* offers § 1406 as protection to the plaintiff who erroneously guesses about some elusive fact, not the plaintiff who engages in a crafty procedural ploy. *Id.* See also *Pedzewick v. Foe,* 963 F.Supp. 48, 51 (D.Mass.1997)(stating that transfer statutes are "not intended to give plaintiffs an end run around the rules of personal jurisdiction and venue" but rather are "intended to facilitate fairness and result in greater convenience to litigants").

Picking up where *Biby* left off, the Western District of Arkansas noted in *United States v. St. Joseph's Regional Health Center,* 240 F.Supp.2d 882 (W.D.Ark.2002), that taking *Goldlawr* and *Biby* together, it is clear that

> an error in selecting the forum, where the defendant can obtain corrective action within a reasonable period of time, does not affect the statute of limitations, even if the selection of the forum was unreasonable. However, where a plaintiff deliberately selects an improper forum; makes no effort to serve the

---

3. Although this Court resolves the issue on other grounds, there is contradictory case law. *See Munro v. Post,* 102 F.2d 686, 688 (2d Cir.1939) ("[T]he law of the case ... requires that the order of the first judge, unless merely a formal or an *ex parte* order, shall not be vacated or nullified by a later judge ... Beyond that [the doctrine] does not go.").

defendant in that forum so that the defendant cannot seek to correct the error; makes the transfer request itself—*ex parte*—for its own purposes; and never had any intention of prosecuting the claim in the forum of filing, there is no analytical basis for the filing to toll the statute of limitations.

*Id.* at 891–92.

The District Court's opinion in *St. Joseph's* is all the more notable given that the case arose from the same False Claims Act litigation by Health Outcomes as the case now before this Court. The *St. Joseph's* Court found that the 1996 complaint did not establish venue over St. Joseph's (one of the 98 hospital-defendants who did not reside or transact business in the Eastern District of Pennsylvania) and that the relator misjoined the parties in the action. The Court determined that the government never intended to proceed with the action in Pennsylvania but instead used the Eastern District of Pennsylvania as a holding dock for 98 misjoined hospital-defendants while it investigated and engaged in settlement negotiations with various defendants.

As the *St. Joseph's* Court noted, the spirit of the False Claims Act is

> to allow a private plaintiff to assert on behalf of the government fraud claims about which the government is uninformed; to allow a reasonable time for the government to investigate; and then to give the government its choice to carry on with the case or leave it to the relator.

*Id.* at 888. The Court held that, contrary to that spirit, the government's actions indicated its concerted effort to investigate and settle the multiple claims at its own pace, selectively carving out those claims that were easiest to settle while keeping the remaining defendants in limbo until it chose to act against them. Viewing the procedural irregularities collectively, the *St. Joseph's* Court concluded that the case came within the rule announced in *Biby*, namely that some good faith expectation of proceeding in the court in which the complaint is filed is essential to tolling statutes of limitations, and that the government's conduct did not meet that requirement.

The defendants in this case have done a thorough job of demonstrating that the government operated against the spirit of the False Claims Act. After Health Outcomes brought its complaint in 1996, the government strategically chose not to intervene in the action but rather to stand to one side and pick off defendants *seriatim*. The government's investigation dragged on incessantly, and with respect to these particular hospital-defendants seven years, until it chose officially to intervene. Moreover, the defects in joinder should have been obvious to the government's experienced civil false claims lawyers from the face of the 1996 complaint. *See Griffin v. Dana Point Condominium Ass'n*, 765 F.Supp. 498, 501 (N.D.Ill.1991)(addressing *Goldlawr* and observing that *Goldlawr* was not intended to salvage a "palpably untenable filing" where the lack of basis for venue is apparent from the face of the complaint).

Even if it were true that the government needed some time to recognize the venue defects on the face of Health Outcomes's 1996 complaint, the fact that it waited more than five years before curing those defects by moving to transfer the case to this Court reveals its intentions. Moreover, the government cannot claim to be a victim of time constraints given that it and the relator still had two years after the filing of the 1996 complaint to cure the venue defects before the statute of limitations ran on any claims alleged in the original complaint. By early 1998, the government had all medical and business

records of the Hospital Defendants that it now relies on in the allegations of the Second Amended Complaint. Although it was not obliged to intervene at that time, the government's decision carries consequences in light of all the facts surrounding this case.

The government contends that there are good reasons for this Court to diverge from the reasoning of the *St. Joseph's* Court. First, it argues that government attorneys conducting litigation for the United States enjoy a special presumption of good faith. The case cited by the government, *Am–Pro Protective Agency v. United States,* 281 F.3d 1234 (Fed.Cir. 2002), supports the proposition that *government officials* are accorded a presumption of good faith when carrying out their duties but it does not hold that the presumption is extended to *government lawyers* with respect to the conduct of civil litigation. As the defendants point out, the government's argument would, in essence, permit an end-run around the Federal Rules of Civil Procedure for all government lawyers.

Second, the government, citing two cases, asserts that statutes of limitations should be construed in favor of the government. But there are no issues in *St. Joseph's* or in this case that turn on an interpretation of the relevant statute of limitations at 31 U.S.C. § 3731(b)(1).

Third, the government argues that *Biby* is an unusual case that would not be followed by the First Circuit Court of Appeals and that it can be distinguished by the fact that the plaintiff in that case filed its complaint close to the expiration of the statute of limitations period while the relator here filed the 1996 complaint at least two years before the statute of limitations ran out on any claims. With respect to the first point, the issues presented in this case are largely of first impression in this

Circuit so it is pure speculation as to how the First Circuit would react to *Biby.* With respect to the second point, the *St. Joseph's* Court was cogent when it noted that it was the lack of intent to proceed in the forum, not the intent to evade the statute of limitations, that is relevant for this court's analysis of the issue. 240 F.Supp.2d at 892 n. 2.

Fourth, the government points to two other district court orders that deviate from the court's reasoning in *St. Joseph's* and which involved defendants from the original Health Outcomes complaint in the Eastern District of Pennsylvania. Defendants contend that neither case is persuasive and this Court, upon careful review, concurs. The first case, *United States ex rel. Health Outcomes Technologies v. Pennock Hospital,* No. 01–292 (W.D.Mich. Feb. 10, 2003)(slip op.), discusses the *St. Joseph's* decision in three sentences but provides no window into its reasoning for rejecting it other than to say "the record does not support a finding that the instant claims were filed in 'bad faith' ". The second case, *United States ex rel. Health Outcomes Technologies v. Rhode Island Hospital,* No. 01–243 (D.R.I. Sept. 3, 2003), offers no justification for denying Rhode Island Hospital's motion nor does it discuss *St. Joseph's* or its rule with respect to the statute of limitations. Given that, to date, the only extended discussion on the statute of limitations issue arising from the Health Outcomes litigation appears in the well-reasoned *St. Joseph's* decision, this Court finds no reason to disregard it.

█ Finally, the government argues that the defendants' allegations with respect to its procedural bad faith and strategic behavior regarding venue are belied by the fact that every action taken by the government was approved by the Pennsylvania court with full knowledge of the applicable facts and, therefore, should be giv-

en deference as "law of the case". This Court is underwhelmed. It questioned defense counsel at oral argument as to the possible grounds offered to the judge in the Eastern District of Pennsylvania in support of jurisdiction over the Massachusetts defendants. Counsel responded that the misjoinder in the 1996 complaint was not obvious and furthermore that the low level of scrutiny by the Court that prevails in *ex parte* hearings left it off guard. Counsel's argument is well taken. The government's *ex parte* actions will not now be left unchallenged in a court that enjoys the benefit of an adversarial proceeding in order to give deference to judgments made by a court that did not.

The government contends that if this Court were to find that, for purposes of the statute of limitations, the case was commenced only when it was filed in this Court, it would have a deleterious effect on enforcement of the False Claims Act because it would force the government to intervene prematurely to cure procedural defects in a relator's complaint. The defendants respond that the government is stuck with the consequences of its strategic choices just like any other party. When, as in this case, 1) a relator files a complaint that on its face contains defects with respect to joinder and venue, 2) the United States chooses to ignore those deficiencies for more than five years while the statute of limitations runs on nearly all of the claims in the case and 3) the United States chooses to fix the deficiencies *ex parte* so that they do not come to light until much later, the government is in no position to argue unfair treatment.

Moreover, if any parties have been procedurally disadvantaged throughout this case, they are the Hospital Defendants. The Supreme Court stated in *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965):

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."

*Id.* at 428, 85 S.Ct. 1050 (citations omitted).

Finding the reasoning of the Court in the *St. Joseph's* decision persuasive and having reviewed the law and facts relating to this case, the Court concludes that the government's claims do not relate back to the date of the filing of the complaint in 1996 in the Eastern District of Pennsylvania but only to the date when the case was transferred to this Court. Because the False Claims Act bars claims older than six years, those claims in Counts I and II of the Second Amended Complaint that accrued before August 9, 1995 are barred by the statute of limitations, 31 U.S.C. § 3731(b)(1).

### 2. Relation Back of the 1995–1997 Claims

■ The Court's ruling on the statute of limitations leaves for consideration the government's claims that accrued after August 9, 1995. Each of the government's claims in the Second Amended Complaint remains subject to a six-year statute of limitations. The original Pennsylvania complaint was transferred to this Court on August 9, 2001. The First Amended Complaint was filed on August 20, 2004 and the Second Amended Complaint was filed on January 13, 2005. Thus, absent a rule or statute permitting relation back to an earlier complaint, all new claims relating to the period before August 20, 1998 are barred by the applicable statutes of limitation. The government bears the burden on this issue. *See LaChapelle*, 142 F.3d at 509.

Under Fed.R.Civ.P. 15(c), an amendment of a pleading relates back to the date of the original pleading if the new claim arose out of the same conduct, transaction or occurrence set forth in the prior pleading. The relator's Pennsylvania complaint was filed in February, 1996. The Second Amended Complaint now before this Court makes claims for the years 1996 and 1997 but those claims cannot expand or modify facts alleged in the earlier pleading because they were not asserted in the original complaint. Thus, those claims cannot relate back under Fed.R.Civ.P. 15(c) and are barred.

The Pennsylvania complaint alleges that false claims were filed from January 1, 1995 until the date the complaint was filed in February, 1996 but offers no facts to support that allegation. Specifically, the 1996 complaint makes those allegations "on information and belief". The First Circuit Court of Appeals has held that unsupported allegations based on information and belief should be disregarded. *See U.S. ex rel. Karvelas v. Melrose–Wakefield Hosp.,* 360 F.3d 220, 226 (1st Cir.2004)(stating that allegations based on information and belief must identify the source of the information and reason for belief). In accordance with *Karvelas,* the 1995 claims are also barred.

The 1995–1997 claims do not relate back to an earlier complaint and, therefore, will be dismissed.

**ORDER**

In accordance with the foregoing, the Hospital Defendants' Motion to Dismiss the Second Amended Complaint Based on Statute of Limitations (Docket No. 97) is **ALLOWED**. The Hospital Defendants' Motions a) to Dismiss the Second Amended Complaint for Failure to Comply with the Particularity Requirements of Fed. R.Civ.P. 9(b) (Docket No. 95), b) to Dis-miss the Entire Second Amended Complaint for Failure to State a Claim and, with Regard to the Common Law Claims Asserted Therein, for Lack of Jurisdiction (Docket No. 100) and c) to Stay Pursuant to the Primary Jurisdiction Doctrine (Docket No. 92) are **DENIED AS MOOT**. The Joint Motion of the Parties for Extensions of the Written Discovery Deadline and the Scheduling Order (Docket No. 129) is similarly **DENIED AS MOOT**. This case is **DISMISSED**.

So ordered.