In re PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION

This document relates to: United States of America ex rel. Ven–A–Care of the Florida Keys, Inc., Plaintiff,

v.

Dey, Inc., et al., Defendant.

MDL No. 1456.
Master File No. 01–12257–PBS.
Civil Action No. 05–11084–PBS.

United States District Court,
D. Massachusetts.

July 17, 2007.

Kenneth M. Resnik, Stern, Shapiro, Weissberg & Garin, George B. Henderson, United States Attorney's Office, Boston, MA, Gejaa T. Gobena, United States Department of Justice, Washington, DC, Jenipher Breckenridge, Hagens Berman Sobol Shapiro, Seattle, WA, for Plaintiff.

Nicole Y. Brumsted, Lieff Cabraser, Heimann & Bernstein, LLP, Boston, MA, for Citizens for Consumer Justice.

John Anthony, Bruegger Simmons Cooper, LLc, East Alton, IL, Kenneth J. Brennan, SimmonsCooper LLC, East Alton, IL, for Edward West.

Michael M. Buchman, Milbert, Weiss, Bershad, Hynes & Lerach, LLP, New York City, for Colorado Progressive Coalition.

Jeffrey B. Aaronson, Bell, Boyd & Lloyd, Chicago, IL, Neil Alden, Curtis

Bergen, Bowman and Brooke, Phoenix, AZ, Jason Bruno Dickstein, Shapiro Morin & Oshinsky, LLP, Washington, DC, for Baxter Healthcare Corp.

Bill L. Bryant, Jr., Akerman Senterfitt, Tallahassee, FL, for Boehringer Ingelheim Intern. GMBH.

Patrick M. Bryan, Kirkland & Ellis, LLP, Washington, DC, Scott A. Barbour, McName, Lochner, Titus & Williams, Albany, NY, Neville H. Boschert, Watkins, Ludlam, Winter & Stennis, P.S., Jackson, MS, for Ivax Corp.

Raymond L. Brown, Brown, Buchanan & Sessoms, PA, Pascagoula, MS, for Asterazenca LP.

Marc E. Ackerman, Harris Beach LLP, New York City, Brian L. Bank, White & Case LLP, New York City, for Sandoz, Inc.

Joseph G. Adams, Snell & Willmer, LLP, Phoenix, AZ, for Pharmacia & Upjohn, Inc.

Pamela Zorn Adams, Sherin and Lodgen, Boston, NA, for Gensia Sicor Pharmaceuticals, Inc.

Kenneth W. Africano, Harter, Screst Law, Buffalo, NYT, for Alergan, Inc.

Kevin N. Ainsworth, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.S., New York, NT, P. Ryan Beckett, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Eli Lilly and Co.

George Ian Brandon, Sr., Squire Sanders & Dempsey, LLP, Phoenox, AZ, for Apothecon, Inc.

Ali Bovingdon, Helena, MT, for State of Montana.

Felix Lee Bowie, III, Davidson, Bowie & Sims, PLLC, Jackson, MS, for Wyeth.

Melanie Matison, Anthony J. Anscombe, Brown Sedgwick, Detert Moran & Arnold, Chicago, IL, for Bristol-Myers Squibb Co.

Ross B. Brooks, Milberg Weiss & Bershad, LLP, New York, NY, for County of Nassau.

Douglas S. Brooks, Kelly, Libby & Hoopes, PC, Boston, MA, Steven F. Barley, Hogan & Hartson, LLP, Baltimore, MD, for Amgen, Inc.

Charlie Bridgmon, McCutchen, Balnton, Rhodes & Johnson, Columbia, SC, for State for South Carolina.

Julie B. Brennan, Manchel & Brennan, Newton, MA, for United Healthcare, Inc., United Healthcare Ins Co.

Thomas W. Breidenstein, Barrett & Weber, Cincinnati, OH, for State of Ohio.

Brooks A. Ames, Piper Rudnick Gray Cary, Boston, MA, for Cardinal Health, Inc.

James J. Breen, Breen Law Firm, Alpharetta, GA, C. Jarrett Anderson, Anderson LLC, Austin, TX, Gary L. Azorsky, Berger & Montagued, Philadelphia, PA, for Ven-A-Care of Florida Keys, Inc.

Justin S. Antonipillai, Arnold & Porter, Washington, DC, for Ethex Corp.

Melissa Aoyagi Davis, Polk & Wardwell, New York, NY, Jessica Vincent, Michael P. Boudett, Barnett Foley Hoag, LLP, Boston, MA, Jack B. Blumenfield, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Astrazeneca Pharmaceuticals, LP.

Thomas L. Boeder, Perkins Coie, Seattle, WA, Lawrence D. Berger, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Immunex Corp.

Anthony Bolognese, Bolognese & Associates, Philadelphia, PA, for United Food & Commercial Workers Union and Employers Midwest Health Benefits Fund.

Nancy M. Bonnell, Phoenix, AZ, Elizabeth M. Bergen, Gibson, McAskill Law Firm, Buffalo, NY, Rex Blackburn, Blackburn & Jones, Boise, ID, for Abbott Laboratories.

Martin A. Aronson, Morrill & Aronson, Phoenix, AZ, for Fujisawa Healthcare, Inc.

Daniel F. Attridge, Kirkland & Ellis, Washington, DC, for B.Braun Medical, Inc.

Susan Hughes, Banning Hemenway, Boston, MA, for Neighborhood Health Plan, Inc.

Mitchell J. Banas, Jr., Jaeckle Fleischmann & Mugel, LLP, Buffalo, NY, for Biogen Idec, Inc.

Megan M. Auchincloss, Morrison & Foerster, Denver, CO, for Purdue Pharma, L.P.

Pamela J. Auerbachm, Kirkland & Ellis, LLC, Washington, DC, for Barr Laboratories, Inc.

Jennifer Aurora, Sedgwick, Detert, Moran & Arnold, LLP, New York, NY, for Organon Pharmaceuticals USA, Inc.

Violet I. Balan, Mayer, Brown, Rowe & Maw, LLP, Chicago, IL, for Johnson & Johnson.

Anita Bapooji Ryan, Robert P. Blood, Goodwin Procter, LLP, Boston, MA, for TAP Pharmaceuticals Products, Inc.

Jason E. Baranski, Morgan Lewis & Bockius, LLP, Philadelphia, PA, for Pharmacia & Upjohn, Inc.

Elise M. Bloom, Edwin Baum, Proskauer, Rose Law Firm, New York, NY, for Biovail Pharmaceuticals, Inc.

Jon Steven Baughman, Stacy D. Belf, Ropes & Gray LLP, Washington, DC, Daniel J. Bennett, Ropes & Gray LLP, Boston, MA, Sheila L. Birnbaum, Skadden, Arps, Slate, Meagher & Flom, New York, NY, for Schering-Plough Corp.

Charles Barnhill, Miner, Barnhill & Galland, Madision, WI, for Commonwealth of Kentucky.

Christopher K. Barry-Smith, Office of Atty. Gen., Boston, MA, for State of Mass.

S. Paul Battaglia, Bond, Schoeneck & King, PLLC, Syracuse, NY, for Par Pharmaceutical, Inc.

Rebecca Bedwell-Coll, Mascone, Emblidge & Quadra, San Francisco, CA, for Constance Thompson.

Terrianne Benedetto, Kline & Specter, Philadelphia, PA, for Intern. Union of Operating Engineers, Local No. 68 Welfare Fund.

Mark A. Berman, Hartmann, Doherty Rosa & Berman, LLC, Hackensack, NJ, for Berlax Laboratories, Inc.

Steve W. Berman, Hagens Berman Sobol Shapiro, LLP, Seattle, WA, for Shirley Geller.

David J. Bershad, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, for Citizens for Consumer Justce.

Adelina O. Berumen, Cal. Dept. of Justice, San Diego, CA, for State of Cal.

Aimee E. Bierman, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, Boston, MA, for Aventis Behring LLC.

Brandon L. Bigelow, Bingham McCutchen, LLP, Boston, MA, for Takeda Pharmaceuticals North America, Inc.

Scott A. Birnbaum, Birnbaum & Godkin, LLP, Boston, MA, for Ethex Corp.

Donald Wayne Bivens, Meyer Hendricks & Bivens, PA, Phoenix, AZ, for Dey, Inc.

Steven E. Bizar, Buchanan Ingersoll, P.C., Philadelphia, PA, for Amerisource-Bergen Corp.

Sam B. Blair, Jr., Baker, Donelson, Bearman, Caldwell & Berkowit, P.C., Memphis, TN, for Monarch Pharmaceuticals, Inc.

Lynn M. Blake, Friedman, Hirschen Law Firm, Albany, NY, for Eisai, Inc., Genzyme Corp.

Zackary T. Bentley, pro se.

T. Mark Jones, pro se.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### *INTRODUCTION*

The United States brings this action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, seeking to recover losses to the Medicare and Medicaid programs caused by allegedly fraudulent average wholesale prices for generic drugs reported by defendants Dey, Inc., Dey L.P., Inc., and Dey L.P. (collectively "Dey").

Relator Ven–A–Care filed its *qui tam* complaint against Dey in the Southern District of Florida on August 13, 1997. Nine years later, after seeking numerous sixty day extensions from the court, the government elected to intervene. On August 24, 2006, the government filed a "complaint-in-intervention" against the defendants, which was unsealed on September 7, 2006, and served Dey with this unsealed complaint.[1] The factual basis for the complaint is set forth in this Court's prior opinion in *United States ex rel. Ven–A–Care of the Florida Keys, Inc. v. Abbott Labs., Inc.,* 491 F Supp.2d 12, 15–17

---

1. The government's complaint-in-intervention states four causes of action against Dey. Count 1 alleges that Dey violated the False Claims Act, 31 U.S.C. § 3729(a)(1), by presenting or causing to be presented a false claim to the federal government. In addition, Count 1 asserts that Dey contravened the FCA by violating the Anti–Kickback Statute. Count 2 alleges that Dey violated 31 U.S.C. § 3729(a)(2) by making or using false records and statements to cause claims to be paid. Count 3 alleges a cause of action for unjust enrichment. Count 4 alleges a claim for common law fraud.

(D.Mass.2007), with which the Court assumes familiarity.

■ Among other things, Dey argues that all causes of action accruing in connection with claims submitted for payment more than 6 years before the government intervened are barred by the statute of limitations, 31 U.S.C. § 3731(b)(1). Citing *United States v. The Baylor Univ. Med. Ctr.,* 469 F.3d 263, 268 (2d Cir.2006) ("*Baylor*"), Dey argues that the action is deemed to have been commenced against Dey for statute of limitations purposes when the complaint-in-intervention was filed by the government on August 24, 2006.

After oral argument, the Court *ALLOWS,* in part, and *DENIES,* in part, Dey's motion to dismiss.

### *PROCEDURAL BACKGROUND* [2]

Relator filed its initial complaint in 1995, and an amended complaint against Dey on August 13, 1997, in the United States District Court for the Southern District of Florida. Relator filed a separate complaint against Dey in this district on April 10, 2000. On December 22, 2004, the United States and relator moved to sever and transfer the claims against Dey in Florida to Massachusetts. Those claims were transferred to this district and assigned Case No. 05–11084. On June 26, 2006, in response to the United States' and relator's request, the related claims originally filed against Dey in the District of Massachusetts were severed from the remainder of that case and consolidated with the claims transferred from Florida. On August 23, 2006, this case finally saw the light of Dey when the United States filed its notice of intervention and complaint-in-intervention in the consolidated case. The complaint was formally unsealed on September 7, 2006. On October 31, 2006, relator Ven–A–Care filed an amended complaint, which adopted the United States' complaint. On November 20, 2006, the case was consolidated with this Court's Average Wholesale Price Multi–District Litigation ("MDL") proceeding.

### *DISCUSSION*

### A. *The FCA*

The FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert–White Co.,* 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968). It permits private entities, called relators, to enforce the civil provisions of the act on behalf of the government. *See* 31 U.S.C. § 3730(b). When a relator files suit, the FCA provides that the "action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1). Consequently, "[t]he relator in a *qui tam* FCA action, while having a stake in the lawsuit, represents the interests of the United States." *United States ex rel. Rockefeller v. Westinghouse Elec. Co.,* 274 F.Supp.2d 10, 16 (D.D.C.2003).

When a private relator, such as Ven–A–Care, brings a claim against a defendant, the statute mandates that a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government" under Fed. R.Civ.P. 4(d)(4). *See* 31 U.S.C. § 3730(b)(2). Furthermore, the FCA requires, "The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on

**2.** Many of the documents were sealed in Florida. The Court has ordered all documents relating to Dey to be unsealed.

the defendant until the court so orders." *Id.* This sixty day provision does not limit the number of extensions that the government may obtain in order to investigate the relator's complaint, provided the government can establish "good cause" before the court presiding over the case. *Id.; see also United States v. Stella Perez*, 956 F.Supp. 1046, 1052 (D.P.R.1997) (holding that the FCA "imposes a duty of diligence on the part of the government to ascertain facts material to its right of action").

Ultimately, the government elects either to intervene in the case or to allow the relator to pursue the action alone on behalf of the United States. If the government chooses to intervene in a relator's suit pursuant to 31 U.S.C. § 3730(b)(4)(A),[3] the FCA provides that "the action shall be conducted by the Government." This takeover provision dictates, "If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." *See* 31 U.S.C. § 3730(c)(1).

A defendant is not required to respond to any *qui tam* complaint until 20 days after the complaint is unsealed and served upon it. 31 U.S.C. § 3730(b)(3).

### B. Statute of Limitations

Dey moves to dismiss the government's complaint-intervention on the ground that it is time-barred. The FCA provides:

(b) A civil action under section 3730 [providing a right of action for FCA] may not be brought—

---

3. 31 U.S.C. § 3730(b)(4) provides:
   (4) Before the expiration of the 60–day period or any extensions obtained under paragraph (3), the Government shall—
   (A) proceed with the action, in which case the action shall be conducted by the Government; or

(1) more than 6 years after the date on which the violation of section 3729 [the FCA] is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C.A. § 3731(b). "Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998).

#### 1. When did the action commence?

The critical question is when the instant action commenced for statute of limitations purposes. Dey relies primarily on *Baylor* to support its argument that the present suit commenced for purposes of the statute of limitations when the government filed its complaint-in-intervention. In *Baylor*, where the *qui tam* action was filed by the relator eight years before the government intervened, the Second Circuit held that the date the "Government's actions commenced (for statute of limitations purposes) was the date on which the complaints-in-intervention were filed." *Id.* at 268. Moreover, it held that the government's complaint-in-intervention could not relate back to the date of the initial complaint by the relator pursuant to Fed. R.Civ.P. 15(c)(2) because:

(B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

The secrecy required by § 3730(b) is incompatible with Rule 15(c)(2), because (as is well-settled) the touchstone for relation back pursuant to Rule 15(c)(2) is notice, i.e., whether the original pleading gave a party "adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense".... The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide. By design, the seal provision of § 3730(b) deprives the defendant in an FCA suit of the notice usually given by a complaint. Because any relation back of subsequent filings to the original complaint is incompatible with the core requirement of notice under Rule 15(c)(2), continued running of the statute of limitations is warranted.

*Id.* at 270 (citations and internal quotation marks omitted). The Second Circuit specifically declined to address whether relation back under Fed.R.Civ.P. 15(c)(1) would be permitted because the parties did not brief that issue. However, the Second Circuit, in dicta, did suggest there was "a colorable argument that the FCA implicitly 'permit[s]' a form of relation back that dispenses with the requirement of notice" under Rule 15(c)(1). *Baylor*, 469 F.3d at 270.

Defendant argues that under *Baylor*, this Court should look to when the government filed its unsealed complaint-in-intervention against Dey—August 24, 2006—as the date the action "commenced." Under this approach, all causes of action based on claims made more than six years before the filing of the complaint-in-intervention would be time-barred.

Disagreeing with *Baylor*, the government replies that this FCA action commenced when the relator filed its complaint against Dey in August 1997. The government argues that the statute of limitations provision in the FCA provides that the period of limitations is measured against when the action is "brought," not when it is unsealed. *See* 31 U.S.C. § 3731(b). The government's view is consistent with the holdings of trial courts that an FCA commences when the relator filed suit.[4] *See, e.g., United States ex rel. Miller v. Bill Harbert Int'l. Const., Inc.,* 2007 WL 851855, at \*2 (D.D.C. March 14, 2007) (rejecting *Baylor* holding) (citations omitted); *see also United States ex rel. Downy v. Corning, Inc.,* 118 F.Supp.2d 1160 (D.N.M.2000), *overruled on other grounds, United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702 (10th Cir.2006) (rejecting argument that FCA action commences when government unseals the complaint and files a complaint-in-intervention); *accord United States ex rel. Parikh v. Premra Blue Cross,* 2007 WL 1031724, at \*3–4 (W.D.Wash. April 3, 2007) (finding that an FCA action commences, and the statute of limitations is tolled, when relator files initial complaint).

Second, the government argues that the FCA permits the government to seek extensions upon a showing that it has been diligently investigating the case without requiring the extensions to be cabined within the six-year limitations period; thus, the statute of limitations is "tolled" during these extensions. *See* 31 U.S.C. § 3730(b)(3). Dey responds that no provision in the FCA provides for such a "tolling" of the statute of limitations pending government investigation. Rather, it contends, § 3731(b)(2) contains the only "tolling provision" found in the FCA, and it

---

4. Indeed, the relator goes so far as to describe *Baylor* as a "renegade" opinion.

runs three years from when "facts material to the right of action are known or reasonably should have been known" by the appropriate "official of the United States."

The government has the better argument that the action is commenced when the relator files its complaint. *See* Fed. R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."); *see also* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1056 (2d ed.2006) (suggesting that courts look to Rule 3 to determine how to commence an action unless the statute provides otherwise). Dey objects that an action cannot be "commenced" for purposes of the statute of limitations unless the defendant receives notice of the complaint under Fed.R.Civ.P. 4. This argument contravenes the well established rule that "[F]iling a complaint suffices to satisfy the statute of limitations." *Henderson v. United States,* 517 U.S. 654, 657 n. 2, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (citing *West v. Conrail,* 481 U.S. 35, 39, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987)); *see also McIntosh v. Antonino,* 71 F.3d 29, 36 (1st Cir.1995) ("Rule 3 adequately covers the mechanics of commencing an action in a federal district court, and the rule makes it transpicuously clear that an action is commenced when the papers are filed."). It is true that "the tolling of the statute contemplates that service is effected within a reasonable time period after filing the complaint." *Novak v. Nat'l Broad. Co.,* 131 F.R.D. 44, 45 (S.D.N.Y.1990) (citing *Maxwell v. Swain,* 833 F.2d 1177, 1178 (5th Cir.1987)). However, reasonableness must be evaluated within the context of the FCA's statutory scheme. The FCA provides specific rules for service of the complaint once it has been unsealed. Thus, in most situations, if a district court has granted the extensions for "good cause," and the complaint is served in a

timely way once it has been unsealed, this reasonableness requirement is met.

▮▮▮▮ Although there may be some ambiguity in the statutory scheme created by the FCA, "no statute of limitations will block federal government actions unless Congress clearly and specifically says so." *Capozzi v. United States,* 980 F.2d 872, 875 (2d Cir.1992). "[S]tatutes of limitations sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. Comm'r,* 464 U.S. 386, 391, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (quoting *E.I. Dupont De Nemours & Co. v. Davis,* 264 U.S. 456, 44 S.Ct. 364, 68 L.Ed. 788 (1924)). "This canon is rooted in the traditional rule *quod nullum tempus occurrit regi*—time does not run against the King. A corollary of this rule is that when the sovereign elects to subject itself to a statute of limitations, the sovereign is given the benefit of the doubt if the scope of the statute is ambiguous." *BP Am. Prod. Co. v. Burton,* —— U.S. ——, 127 S.Ct. 638, 646, 166 L.Ed.2d 494 (2006) (internal citations omitted). Thus, in determining the breadth of the statute of limitations, this Court must only ask "simply how far Congress meant to go when it enacted the statute of limitations in question." *Id.* at 649.

Looking to the language, purpose, and structure of the FCA, this Court concludes that the action commences, for purposes of the statute of limitation, when the relator files its sealed complaint against a defendant and otherwise meets the strictures of 31 U.S.C. § 3730(b).

### 2. *Relation Back*

The next question is whether a so-called "complaint-in-intervention" should be treated as an amended complaint that relates back to the relator's initial complaint

under Fed.R.Civ.P. 15(c). Rule 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
>
>> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>>
>> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...

Fed.R.Civ.P. 15(c). Generally, "the rationale of the relation back rule is to ameliorate the effect of the statute of limitations." 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1497 (2d ed.2006). In this manner, Rule 15(c) "provide[s][a] maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Siegel v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir. 1983) (citations omitted).

Once the government decides to intervene, it has the primary responsibility for prosecuting the action and is not bound by the actions of the relator. *See* 31 U.S.C. § 3730(c)(1). As such, once the government is in the driver's seat, it has the statutory right to amend the complaint, and usually does so. *See* 1 John T. Boese, *Civil False Claims and Qui tam Actions,* § 4.05[B] at 4–173 (3d 3d.2006). It is the practice in this district that when the government elects to intervene in *qui tam* cases, it files a pleading styled as a "complaint-in-intervention." *See, e.g., California ex rel. Ven–A–Care of the Florida Keys, Inc. v. Abbott Labs., Inc.,* 478 F.Supp.2d 164 (D.Mass.2007). A review of the caselaw suggests that the government's practice of filing a complaint-in-intervention is nationwide.

Many courts have taken the view that a complaint-in-intervention should be treated as an amended complaint under Fed. R.Civ.P. 15. See, *e.g., United States ex rel. Purcell v. MWI Corp.,* 254 F.Supp.2d 69, 75 (D.D.C.2003) (stating that "the government's complaint in intervention is an amendment of the relator's complaint" under Rule 15). Although the United States typically files its own complaint-in-intervention, nothing in the FCA requires a complaint-in-intervention. Instead, the United States could elect to intervene by simply using the relator's complaint.

The key dispute (left open by *Baylor*) is whether the FCA provides a principle of relation back under Rule 15(c)(1) that would allow the government's 2006 complaint-in-intervention to utilize the earlier date of commencement provided by the relator's 1997 suit. This provision, added to the Federal Rules of Civil Procedure in 1991, was intended to make clear "that the rule [of general relation back] does not apply to preclude any relation back that may be permitted under the applicable limitations law." *Nelson v. County of Allegheny,* 60 F.3d 1010, 1014 n. 4 (3d Cir. 1995) (citing 1991 Advisory Committee Note); *accord Saxton v. ACF Indus., Inc.,* 254 F.3d 959, 962–63 (11th Cir.2001). According to the Advisory Committee Note to Rule 15, if the law providing the limitation "affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." *See* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1503 (2d ed. Supp.2001) (noting that "[i]n 1991, Rule 15(c) was amended to clarify that relation back may be permitted even if it does not meet the standards of the federal rule if it would be permitted under the applicable limitations law").

As is well established, the FCA contemplates a direct link between the interest of the relator, who is always acting "in the name of the Government," and the government in every *qui tam* suit. *See* 31 U.S.C. § 3730(b)(1). Indeed, a Latin scholar might recognize the phrase *"qui tam"* as "an abbreviation for 'qui tam pro domino rege quam pro seipso,' which literally means 'he who as much for the king as for himself.'" *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine,* 24 F.3d 320, 324 n. 7 (1st Cir.1994) (citations omitted); *see also United States ex rel. Rockefeller,* 274 F.Supp.2d at 16 ("The relator in a *qui tam* FCA action, while having a stake in the lawsuit, represents the interests of the United States"); *see United States ex rel. Zissler v. Regents of Univ. of Minn.,* 154 F.3d 870, 872 (8th Cir.1998) ("Even in cases where the United States has declined to intervene, the structure of the *qui tam* procedure, the extensive benefit flowing to the government from any recovery, and the extensive power the government has to control the litigation have been held to weigh heavily for holding that it remains the real party in interest").

■ The unique structure of the FCA supports the government's position that the government's complaint should be treated as an amended complaint that relates back to the relator's complaint under Rule 15(c)(1). *See United States ex rel. Kaplan v. Metro. Ambulance & First–Aid Corp.,* No. 00–Civ. 3010(ERK)(JMA), unpublished slip op. (E.D.N.Y. July 5, 2007) (citing *Rockwell Int'l Corp. v. United States,* —— U.S. ——, 127 S.Ct. 1397, 1411, 167 L.Ed.2d 190 (2007)) (holding that Rule 15(c)(1) relation back was authorized by FCA). Rule 15(c)(1), unlike Rule 15(c)(2), does not contain a specific requirement

that the amended complaint be related to the same "conduct, transaction or occurrence" in the original complaint. Nonetheless, the government concedes, relation back under Rule 15(c)(1) is limited. Thus, if the government's complaint contains new claims unrelated to those asserted in the original complaint, then the original complaint cannot serve as a proper placeholder under Rule 15(c)(1). For example, the government agrees it cannot bring claims against new parties which would be untimely under the six-year bar.[5]

Dey objects that relation back under Rule 15(c)(1) is impermissible even when the claims and parties are substantially the same because the defendants lacked proper notice of the suit until the government unsealed its complaint-in-intervention in 2006. Unlike Fed.R.Civ.P. 15(c)(2) and Fed.R.Civ.P. 15(c)(3), notice is not a specific prerequisite of relation back in the 15(c)(1) context. *See Baylor,* 469 F.3d at 270 ("the touchstone for relation back pursuant to Rule 15(c)(2) is notice."); *see also* Fed.R.Civ.P. 15(c)(3) (allowing relation back only if party "has received notice of the institution of the action"). Although notice may be the lighthouse of Rules 15(c)(2) and 15(c)(3), Dey points to no caselaw, and this Court finds none, to support the contention that a rule of relation back created by statute cannot be permitted under Rule 15(c)(1) without notice, especially since the statute at issue mandates such secrecy. *See* 31 U.S.C.A. § 3730(b)(2).

Dey next objects to the sufficiency of Ven–A–Care's 1997 complaint on the grounds that the relator's initial complaint remained sealed for a significant period of

---

5. The parties have not briefed the standard for evaluating whether new claims against the initial defendant are time-barred. According to the relator, the 1997 complaint only involved physician administered infusion drugs, but the later complaint involved different drugs. The Court does not address that issue here.

time and that the government did not act with proper diligence in investigating Ven–A–Care's claims. (Def.'s Mem. Supp. Mot. Dismiss 17 (citing *United States v. St. Joseph's Reg'l Health Ctr.*, 240 F.Supp.2d 882, 888 (W.D.Ark.2002)) (frowning upon "the multiple interventions [by the government] ... [which] appear to the Court to have no other justification than to allow the government to investigate and settle the multiple claims at its own pace, selectively carving out those claims that were easiest to settle while keeping the remaining defendants in limbo until it chose to act against them")). In this case, the government investigated the case for nearly a decade before ultimately deciding to enter the fray and allowing the case to surface.[6]

While the number of extensions is worrisome, here, Dey has not produced any evidence that these extensions were improper, in bad faith, or prejudicial. The court originally in charge of this litigation permitted the government a number of lawful extensions to the sixty day seal deadline. Indeed, the government contends that Dey had notice of the action virtually from the time it was filed and engaged in considerable efforts to persuade the government not to intervene. Thus, prejudice is unlikely. While in some circumstances egregious delay may be sufficiently prejudicial to trigger due process concerns, this record is insufficient to address any constitutional concerns.

### 3. Sufficiency

Having determined that the FCA allows relation back under Rule 15(c)(1), this Court turns to the factual issue of "whether the relator's *qui tam* complaint, as drafted and filed, could serve as a sufficient placeholder to achieve relation back in the *qui tam* context." *Baylor*, 469 F.3d at 270. The determination of whether Ven–A–Care's initial complaint could serve as a Rule 15 placeholder requires this Court to "evaluat[e] the sufficiency of [the] relator's complaint," viewed against the backdrop of "the FCA itself, [including] its structure and purposes." *Id.* (citing *Campbell v. Redding Med. Ctr.*, 421 F.3d 817 (9th Cir.2005)). Some courts have held that if the relator's initial complaint were "egregiously defective," it neither commences the action for purposes of the statute of limitations nor serves as a relation back placeholder. *Id.* at 270 n. 10 (citing *Biby v. Kansas City Life Ins. Co.*, 629 F.2d 1289, 1294 (8th Cir.1980)); *see also United States ex rel. Health Outcomes Techs. v. Hallmark Health Sys., Inc.*, 409 F.Supp.2d 43, 49–50 (D.Mass. 2006) (finding that a complaint could not relate back to the date relator originally filed the complaint in a plainly improper venue).

Dey argues that the relator's complaint is defective because this Court lacked subject matter jurisdiction over Ven–A–Care's initial complaint.[7] If the Court did not have jurisdiction over Ven–A–Care's first

---

6. These long delays are quite troubling. Evidence spoils, memories fade, and prejudice may result. In my experience, the government routinely files for multiple extensions of time, frequently citing as the reason the size of the case and lack of resources to investigate adequately. At some point, though, the government must fish or cut bait. *See, e.g., United States ex rel. Franklin v. Parke–Davis*, No. 1:96–cv–11651–PBS, (requiring the government to decide whether or not to intervene after approximately three years of investigation).

7. Normally, this Court would not consider arguments first raised in a reply brief. However, I have decided to address Dey's challenge because it goes to this Court's subject matter jurisdiction and because the government had an opportunity to rebut Dey's argument in its sur-reply.

pleading, the government's complaint-in-intervention cannot properly relate back. Dey contends that this Court lacks subject matter jurisdiction because Ven–A–Care filed two *qui tam* actions: one in 1997 in Florida and one in 2000 in Massachusetts. 31 U.S.C. § 3730(b)(5) provides that "[w]hen a person brings an action under this subsection .[i.e., the Florida suit], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." All subsequent actions, therefore, are precluded. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir.2001) (holding that if an FCA action is based on the same facts underlying a pending case, the court must dismiss the later-filed case for lack of jurisdiction).

■ If the 2000 complaint were based on the same facts as the initial 1997 complaint, then the Court would not have jurisdiction over the 2000 Massachusetts complaint.[8] However, this Court still would have jurisdiction over the original 1997 Florida complaint because the Florida case was properly transferred to this district as part of the overarching AWP multi-district litigation. Consequently, Dey's jurisdictional challenge, which assumes this Court's power flows from the 2000 Massachusetts complaint, is flawed. At very least, this Court has jurisdiction over the 1997 complaint; therefore, it may serve as a relation back placeholder for the government's complaint-in-intervention.

**8.** Dey also contends that the facts on which the 1997 Florida complaint relies were publicly disclosed in 1996. The government disagrees, stating that the government report involved other manufacturers.

**9.** According to the MDL record, a drug manufacturer typically reports drug pricing on a quarterly basis to the compendia. Any fact

*4.  The Triggering Date*

■ Dey argues that the relevant date for purposes of the statute of limitations is when the defendant first launched the scheme to submit false claims in 1992. Dey, citing to *United States v. Bornstein*, 423 U.S. 303, 313, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976), argues that it cannot be held liable for each false price because it initially published the allegedly false price in 1992 and never changed it.[9] The First Circuit has roundly rejected this proposition. An FCA claim accrues each time a false claim is submitted. *See United States v. Rivera*, 55 F.3d 703, 707 (1st Cir.1995) (stating that an FCA violation "was 'committed,' for statute of limitation purposes, whenever [defendant] can properly be said to have presented its [false] insurance claim to the government") (citations omitted). Indeed, Dey's publication of false price data, which involves the regular quarterly republication of false AWP figures with knowledge that these figures would be used to set reimbursement figures for subsequent claims, is distinguishable from the case in *Bornstein*, where the submission of multiple claims "was, so far as [defendant] was concerned, wholly irrelevant completely fortuitous and beyond [defendant's] knowledge or control." *Bornstein*, 423 U.S. at 312, 96 S.Ct. 523. As such, in this case a claim accrued each time a false claim was presented. *See Rivera*, 55 F.3d at 707.

*C.  Unjust Enrichment and Fraud*

The parties agree that 28 U.S.C. § 2415(a),[10] which provides a six-year limi-

dispute about the frequency with which Dey reported its prices can be addressed during discovery.

**10.** This statute provides, in pertinent part, that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact,

tations period, controls the government's claim of unjust enrichment, whereas 28 U.S.C. § 2415(b),[11] which provides a three-year limitations period, applies to the government's fraud claim, which sounds in tort. *See United States v. Intrados/Int'l Mgmt. Group,* 265 F.Supp.2d 1, 13–14 (D.D.C.2002) (applying § 2415 to unjust enrichment and common law claims brought by United States). Although the government's complaint-in-intervention relates back to the date of Ven–A–Care's original filing on August 13, 1997 under the FCA, the government points to no legal basis for applying Fed.R.Civ.P. 15(c)(1) to the common law claims. For the reasons explained in *Baylor,* there is no relation back under Fed.R.Civ.P. 15(c)(2) because no notice was given of the complaint. *Baylor,* 469 F.3d at 270. Thus, the government cannot recover on a theory of unjust enrichment for claims that accrued prior to August 23, 2000; similarly, the government cannot recover on its action for fraud for any claims that accrued prior to August 23, 2003.

### D. Rebate Agreements and 42 U.S.C. § 1396r–8

42 U.S.C. § 1396r–8 states that in order for a drug manufacturer to receive payments from the Medicaid program, the manufacturer must have first "entered into and have in effect a rebate agreement" with the federal government. On February 28, 1991, Dey entered into such a rebate agreement with the government pursuant to this statute. Dey argues in its motion to dismiss that this rebate agreement, because it is an express contract that controls the subject matter of the government's claims, precludes the government from recovering on its claims under the FCA and common law—including fraud and unjust enrichment.

Each Rebate Agreement specifies that "nothing in this Agreement shall be construed as a waiver of relinquishment of any legal rights of the Manufacturer or the Secretary under the Constitution, the Act, other federal laws, or state laws." Rebate Agreement § IX(d). As this provision in the agreement makes clear, the federal government retains its ability to exercise its rights under the common law and under the FCA, notwithstanding this agreement.

### E. Miscellaneous

The Court **DENIES** the motion to dismiss the claims under Rule 9(b) because the allegedly fraudulent AWP and spread for each drug was pleaded with particularity, *see California ex rel. Ven–A–Care,* 478 F.Supp.2d at 171–72; **DENIES** the motion to dismiss based on the government's knowledge of the fraud, *see id.* at 174–75; **DENIES** the motion to dismiss because there was no false claim, *see id.* at 172–77; **DENIES** the motion to dismiss the fraud claim, *see id.;* **DENIES** the motion to dismiss the unjust enrichment claim, *see Massachusetts v. Mylan Labs.,* 357 F.Supp.2d 314, 324 (D.Mass.2005); *DE-*

---

11. This statute provides, in pertinent part, that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues...." 28 U.S.C. § 2415(b)

shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later...." 28 U.S.C. § 2415(a).

*NIES* the motion to dismiss based on the failure to allege that the defendants presented or caused to be presented a false claim, *see United States ex rel. Ven–A–Care of the Florida Keys, Inc. v. Abbott Labs., Inc.,* 491 F.Supp.2d 12, 15–17; *DENIES* the motion to dismiss for failure to plead sufficient facts to state an anti-kickback claim, *see id.* at 16–20; and *DENIES* the motion to dismiss based on the argument that the defendants rendered no implied certification under the False Claims Act, *see id.*

### ORDER

Defendants' motion to dismiss [Docket No. 3507] is *ALLOWED,* in part, and *DENIED,* in part. The unjust enrichment claim is dismissed for all claims that accrued prior to August 23, 2000. The action for fraud is also dismissed for all claims that accrued prior to August 23, 2003. In all other respects, the motion to dismiss is denied.

The government shall produce forthwith all pleadings in this case that relate to Dey, but may redact those portions specifically related to another company. The clerk shall unseal all pleadings in this case except those specifically related to another defendant.